UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEREMY LEVIN and DR. LUCILLE LEVIN, : <br>  : <br> Plaintiffs, : <br>  : <br> v. : <br>  : <br> ISLAMIC REPUBLIC OF IRAN; IRANIAN : <br> MINISTRY OF INFORMATION AND : <br> SECURITY; SEYYED ALI HOSSEINI : <br> KHAMENEI; MOHAMMAD : <br> MOHAMMADI NIK; and IRANIAN ISLAMIC: <br> REVOLUTIONARY GUARD CORP, : <br>  : <br> Defendants. : | CASE NO. 1:05-CV-02494-GK |

## PLAINTIFFS' PRETRIAL STATEMENT

In anticipation of the preliminary pretrial conference set for July 18, 2007, Plaintiffs Jeremy Levin ("Jerry Levin" or "Mr. Levin") and Dr. Lucille Levin ("Sis Levin" or "Dr. Levin") hereby submit this Pretrial Statement to the Court.

**I.   BACKGROUND**

Plaintiff Mr. Levin was kidnapped off a street in Beirut, Lebanon, and held hostage for 343 days by Hizbollah. Mr. Levin was taken by the same Iranian sponsored terrorist group that kidnapped and held hostage Joseph Cicippio, David Jacobsen, Frank Reed, Father Lawrence Martin Jenco, and William Buckley, all of whom (and/or their relatives) received judgments and damages awards against Iran. *See, e.g.*, *Cicippio v. Islamic Republic of Iran*, 18 F. Supp. 2d 62, 68 (D.D.C. 1998)

(Joseph Cicippio, David Jacobsen, and Frank Reed); *Surette v. Islamic Republic of Iran*, 231 F. Supp. 2d 260, 274 (2002) (William Buckley); *Jenco v. Islamic Republic of Iran*, 154 F. Supp. 2d 27, 39-40 (2001) (Father Lawrence Martin Jenco).

Dr. Levin is Mr. Levin's wife and has an intentional infliction of emotional distress and loss of consortium claim, as the wives did in the *Cicippio* and *Buckley* cases. *Cicippio*, 18 F. Supp. 2d at 70; *Surette*, 231 F. Supp. 2d at 274.

The details of Mr. Levin's kidnapping and Dr. Levin's ordeal are set forth in detail in Plaintiffs' pending Motion for Default Judgment and Plaintiffs' sworn affidavits submitted in support thereof.

On August 29, 2006, default was entered against Defendants the Islamic Republic of Iran ("Iran"), the Iranian Revolutionary Guard Corps ("IRGC"), and the Iranian Ministry of Information and Security ("MOIS"). Order for Entry of Default [Docket No. 12]. The only remaining issue for the Court is to determine and enter the amount of compensatory damages. Due to various holdings of the District Courts in these cases and the virtual impossibility of collection, Plaintiffs are not seeking punitive damages.

## II. COMPENSATORY DAMAGES CAN BE DETERMINED AND ENTERED WITHOUT LIVE TESTIMONY

After default was entered by the Court, on December 12, 2006, Plaintiffs filed a Motion for Default Judgment. *See* Plaintiffs' Motion for Default Judgment

[Docket No. 13].[1] Plaintiffs' Motion is currently pending before this Court and to date has not been ruled upon.

Plaintiffs believe determination of the amount of compensatory damages caused by the terrorist acts can be properly based on the sworn testimony and evidentiary submissions filed in support of Plaintiffs' Motion for Default Judgment, as the Court did in *Haim v. Islamic Republic of Iran*, 425 F. Supp 2d 56, 59-60 (D.D.C. 2006); *see also Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 288 n.1 (D.D.C. 2003); *Hutira v. Islamic Republic of Iran*, 211 F.Supp.2d 115, 124 (D.D.C.2002); *Weinstein v. Islamic Republic of Iran*, 175 F. Supp. 2d 13, 21 (2001); *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 111 (6th Cir. 1995) ("Use of affidavits in granting default judgments does not violate either due process or the FSIA.").

Plaintiffs have submitted admissible evidence on each element necessary for the Court to enter a default judgment which includes the amount of compensatory damages. Specifically, in their Motion for Default Judgment, Plaintiffs establish:

1. Subject matter jurisdiction, see pages 13-22;
2. Personal jurisdiction, see page 22;
3. Proper venue, see pages 22-23;

/ / /

---

[1] As a courtesy, Plaintiffs will send a hard copy of their Motion for Default Judgment and supporting documents to the Court's clerk.

    4. Each element of their causes of action, see pages 23-32; and

    5. Compensatory damages, see pages 32-33.

### III.    EVIDENTIARY HEARING

As the Court is aware, Mr. Levin has leukemia and is currently undergoing chemotherapy in Birmingham, Alabama. *See* Plaintiffs' Motion for Expedited Ruling on Motion for Default Judgment [Docket No. 17]. Notwithstanding Mr. Levin's health, if the Court believes it would be useful or helpful in determining and entering the amount of compensatory damages, Plaintiffs will travel from Alabama to Washington D.C. to appear and testify at an evidentiary hearing. Mr. Levin's doctor had cleared Mr. Levin to travel to Washington D.C. in August so long as there is no further deterioration in his health. Plaintiffs' counsel are in Los Angeles, but will also travel to Washington D.C., if necessary.

If the Court should require live testimony, Plaintiffs' best estimate is that they would need no more than one day to present their case, which would consist of the live testimony of (1) Mr. Levin, as to his kidnapping and treatment during captivity as well as the losses and damages which he sustained as a result thereof; (2) Dr. Levin, as to her efforts to obtain her husband's release from captivity, the losses and damages suffered as a result of her husband's captivity, and her and Mr. Levin's conditions both prior to and subsequent to the hostage taking; and (3) Dr.

/ / /

/ / /

/ / /

Landrum Bolling[2], as to Dr. Levin's efforts to obtain her husband's release from captivity, as well as Dr. Levin's condition both prior to and subsequent to his imprisonment and torture. The substance of each of these witnesses' testimony is set forth in their sworn affidavits submitted in support of Plaintiffs' Motion for Default Judgment, each of which are being resubmitted hereto as Exhibits A-C.

The Court indicated in its June 14 conference call that it would accept expert testimony by written submission. Plaintiffs' expert, Dr. Patrick Clawson, also submitted a sworn affidavit in support of Plaintiffs' Motion for Default Judgment, which is resubmitted hereto as Exhibit D. Dr. Clawson is the Deputy Director of the Washington Institute for Near East Policy, and has published numerous articles on Iran's economic policies and has testified before this Court in other hostage cases and the United States Congress. His affidavit establishes that Hizbollah was the group responsible for Mr. Levin's kidnapping, and Hizbollah's relationship with Iran, the MOIS, and the IRGC. If the Court requires additional testimony beyond Dr. Clawson's sworn affidavit, Plaintiffs will obtain and file transcripts of Dr. Clawson's prior trial testimony.

/ / /

/ / /

/ / /

/ / /

---

[2] Dr. Bolling is the senior advisor on policy and program development for the international relief and development agency, Mercy Corps, and worked closely with Dr. Levin to try to obtain Mr. Levin's release.

## IV. CONCLUSION

Plaintiffs request that the Court rule on their Motion for Default Judgment based on the parties' written submission.  However, if the Court should require live testimony, Plaintiffs and counsel are prepared to travel to Washington D.C. for an evidentiary hearing, which has tentatively been set by the Court for August 12-13, 2007.

Dated:  July 13, 2007Respectfully submitted,

/s/ Suzelle M. Smith
Suzelle M. Smith
D.C. Bar No. 376384
Howarth & Smith
523 West Sixth Street, Suite 728
Los Angeles, California 90014
Phone:  213-955-9400
Fax: 213-622-0791

Attorney for Plaintiffs